# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHRISTINE GUMBS, ) <br> ) <br> Defendant. ) <br> ) | Case No. 13-40128-01-JAR |

## MEMORANDUM AND ORDER

Before the Court are Defendant Christine Gumbs' Motion to Dismiss Count 1 of the Indictment (Doc. 22), and Motion to Dismiss Counts 2-4 of the Indictment (Doc. 23); and the Government's Rule 404(b) Notice (Doc. 25). The issues are fully briefed. The Court conducted a hearing on March 17, 2014, during which the Court heard oral argument and the Government presented evidence. The Court has considered the filings and the arguments made by the parties at the hearing and is prepared to rule. As described more fully below, the Court grants Defendant's motion to dismiss Count 1 of the Indictment but denies her motion to dismiss Counts 2 through 4. The Court further sustains Defendant's objection to the Government's Rule 404(b) evidence.

**I.     Background**

The Indictment in this matter alleges four counts against Christine Gumbs, a citizen who resided at the Ft. Riley Military Installation with her husband, Specialist Javier Gumbs, at the time of the alleged crimes. Specialist Gumbs is the step-father of two of Defendant's children, L.V. and C.T.; they have one biological child together, J.G. Specialist Gumbs brought L.V. to

the Irwin Army Community Hospital on October 7, 2012, with extensive injuries: open wounds, lacerations, burn marks and scars. Eventually, L.V. disclosed that Specialist Gumbs had abused him by burning him, beating him, and forcing the family dog to bite him. He was eventually transferred to Children's Mercy Hospital in Kansas City, Missouri. Defendant was at work at the time of the abuse on October 7, 2012.

On February 20, 2013, charges were brought against Specialist Gumbs for violating the Uniform Code of Military Justice. He was charged with one count of Battery upon a Child under 16 years of Age under § 128, and one count of Reckless Child Endangerment under § 134. The Court Martial was scheduled for June 10–12, 2013. On May 15, 2013, Defendant went to the Armed Forces Bank and prepared a notarized statement, taking full responsibility for burning L.V. At the Court Martial, Defendant testified that she drafted the document, that she was aware of the charges against her husband when she drafted it, and then asserted her Fifth Amendment rights when questioned as to the substance of her statement.

The Government proffered evidence about the nature of L.V.'s injuries, including photographs from the October 7 incident. The evidence includes statements made by L.V. about his abuse, and C.T.'s testimony that Specialist Gumbs forced him to hold down L.V. during the abuse, and threatened to burn C.T. if he did not comply. C.T. also told investigators that Specialist Gumbs had beaten him with a fist and belt. L.V.'s treating physician will testify that L.V.'s injuries occurred during multiple episodes of abuse that occurred over a range of time, and that there is no way to determine with complete certainty the age of the wounds and scars. She will testify that some of the injuries and scars could be months old, while others could be days old. Because L.V. and C.T. provided statements that the abuse happened when they resided at Fort Riley, the Government charged counts 2 through 4 from the date that the family moved to

Fort Riley, which was in June 2012.[1]

Count 1 of the Indictment charges Defendant with being an accessory after the fact under 18 U.S.C. § 3, to Specialist Gumbs' offenses under the Uniform Code of Military Justice. Counts 2 through 4 of the Indictment charge Defendant under the Assimilated Crimes Act, 18 U.S.C. § 13, with reckless child endangerment under K.S.A. § 21-5601. Each ACA count pertains to one of Defendant's three children living in the Gumbs' home. At the time of the October 7, 2012 incident, L.V. was five years old, C.T. was seven years old, and J.G. was one year old.

Defendant has another child, C.W., who is about one year older than J.G., with Richie E. Welsh, Jr. Defendant and Welsh never married. In June 2011, Welsh resided in the Virgin Islands and Defendant resided in Virginia. Welsh picked up C.W. in Virginia for a prearranged extended two-month visitation. Upon changing his son's diaper, Welsh noticed open sores and wounds due to an extreme case of eczema. When Welsh returned with C.W. to the Virgin Islands and took C.W. to a doctor, the child was admitted to the hospital and treated for three days. The documents submitted by the Government about this incident include a Virgin Islands Police report that the child suffered from neglect because his medical condition had gone untreated. It discusses Defendant's reticence to cooperate in the investigation. The child has been in his father's custody since this incident.

## II. Discussion

### A. Motion to Dismiss Count 1

18 U.S.C. § 3 provides: "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent

---
[1] *See* Bill of Particulars, Doc. 39 ¶ 2.b.

his apprehension, trial or punishment, is an accessory after the fact." The elements of this claim are: (1) the commission of an underlying offense against the United States; (2) the defendant's knowledge of that offense; and (3) assistance by the defendant in order to prevent the apprehension, trial or punishment of the offender.[2] Defendant argues in her motion to dismiss that the Indictment fails because neither of Specialist Gumbs' offenses under the Uniform Code of Military Justice constitute an "offense against the United States."

Defendant argues that offenses against the United States only include those offenses enumerated in the United States Criminal Code, and do not include military offenses. She argues that the military offense upon which Specialist Gumbs was charged is against a minor child, not against the United States. Because Specialist Gumbs' offenses could not have been prosecuted in federal court, Defendant argues they may not serve as a predicate to an accessory after the fact charge. Defendant also focuses on the constitutional and statutory distinction between courts martial and Article III courts. For example, 18 U.S.C. § 3481, dealing with competency of the accused, and 18 U.S.C. § 4083, providing when a person may be imprisoned in a United States Penitentiary, each refer to persons charged or convicted of "offenses against the United States *or by courts-martial*."[3]

The Government argues that the Uniform Code of Military Justice is a law of the United States, citing Article I of the Constitution, which delegates to Congress the task of providing rules and regulations governing the military. And the Government points to 1 U.S.C. § 204, which provides:

---

[2]*United States v. Lepanto*, 817 F.2d 1463, 1467 (10th Cir. 1987).

[3]18 U.S.C. §§ 3481, 4083 (emphasis added).

> In all courts, tribunals, and public offices of the United States, at home or abroad, of the District of Columbia, and of each State, Territory, or insular possession of the United States–
>
> (a) United States Code.--The matter set forth in the edition of the *Code of Laws of the United States current at any time shall, together with the then current supplement, if any, establish prima facie the laws of the United States* . . . .

The Government points out that Article 128 of the Uniform Code of Military Justice, the offense of assault, is codified at 10 U.S.C. § 928, and classified as a "punitive offense."

The Court is persuaded by Defendant's argument that the dearth of case law on this subject supports her interpretation of the statute, that the phrase "laws against the United States," does not encompass crimes under the Uniform Code of Military Justice. Neither party can point this Court to a case where a defendant was prosecuted under 18 U.S.C. § 3 based on an underlying violation of the Uniform Code of Military Justice.

The Tenth Circuit makes clear that "any offense against the United States" means any federal offense.[4] The offense need not be "directed at the United States as target or victim" in order to qualify as an offense against the United States.[5] They are offenses defined by congressional statute.[6] Here, the Government is charging Defendant with being an accessory after the fact knowing that a military offense has been committed, not that an offense against the United States has been committed. Congress' answer to the problem of civilian crimes on federal land is the Assimilated Crimes Act ("ACA"). It incorporates the substantive criminal

---

[4] *United States v. Fields*, 516 F.3d 923, 932 (10th Cir. 2008) (citing *Iysheh v. Gonzales*, 437 F.3d 613, 614 (7th Cir. 2005)).

[5] *United States v. Gabrion*, 517 F.3d 839, 854 (6th Cir. 2008).

[6] *Cotton v. United States*, 52 U.S. 229, 231 (1850).

law of the state in which the crime is committed into federal criminal law and allows for such crimes to be prosecuted in federal court.[7] Indeed, the Government properly charged Counts 2 through 4 under the ACA based on underlying violations of the Kansas criminal code.

Just because the assault provision of the Uniform Code of Military Justice is codified in the United States Code does not mean that it is an offense against the United States. The statute explicitly provides that this crime "shall be punished as a court-martial may direct."[8] Of course, all of the notes of decisions dealing with the punishment of this offense discuss the court-martial sentence that applies. In contrast, offenses against the United States under the criminal code provide for sentencing terms, often in the form of statutory mandatory minimum or maximum sentences.[9] Neither party can identify a case in which a defendant was charged in federal court with this offense, either as a principal, or as an accessory after the fact. For all of these reasons, the Court agrees with Defendant that Count 1 must be dismissed.

B. **Motion to Dismiss Counts 2 through 4**

Counts 2 through 4 charge Defendant under the ACA based on the underlying crime of child endangerment under Kansas law. Defendant argues that the Kansas child endangerment statute is unconstitutionally vague as applied to her because she could not have known that her actions would subject her to prosecution, and because the statute encourages arbitrary and erratic arrests and convictions. "'When reviewing a statute alleged to be vague, courts must indulge a presumption that it is constitutional, and the statute must be upheld unless the court is satisfied

---

[7] 18 U.S.C. § 13(a).

[8] 18 U.S.C. § 928(a),(b)(2).

[9] *See, e.g.*, 21 U.S.C. § 841; 18 U.S.C. § 3553(a).

beyond all reasonable doubt that the legislature went beyond the confines of the Constitution.'"[10] In order to pass constitutional muster, a criminal statute challenged under the vagueness doctrine must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[11] Importantly, if the vagueness challenge is not raised on First Amendment grounds, it "must be examined in light of the facts of the case at hand. One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."[12]

The statute provides in part: "(a) Endangering a child is knowingly and unreasonably causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health may be endangered."[13] According to Defendant, she could not have known that going to work and leaving her children with her husband at their home could make her liable under this statute. Defendant further argues that the charged conduct over a several-month period is vague. Because the documented injuries in this case only involve one of her three children on a specific date, Defendant argues that the law as applied to her amounts to strict liability, making it unconstitutionally vague.

As an initial matter, the Court granted Defendant's motion for a bill of particulars at the hearing on these motions, which the Government filed on March 20, 2014. The Bill of Particulars renders moot Defendant's complaint about the period of time charged in the

---

[10]*United States v. Saffo*, 227 F.3d 1260, 1270 (10th Cir. 2000) (quoting *Brecheisen v. Mondragen*, 833 F.2d 238, 241 (10th Cir. 1987)).

[11]*Id.* (quotation and citation omitted).

[12]*Id.* (citing *United States v. Corrow*, 119 F.3d 796, 803 (10th Cir. 1997)).

[13]K.S.A. § 21-5601.

7

Indictment—it clarifies the treating physician's expected testimony that L.V.'s injuries took place over a period of time that could be months, and that the children provided statements that the abuse began when the family moved to Fort Riley in June 2012. Moreover, the Government proffered evidence that C.T. was subjected to abuse as well; that the charges are not limited to direct physical abuse of L.V. Therefore, the Court is left with Defendant's as applied challenge based on the fact that the charges are tied to Defendant's actions in leaving her three children in Specialist Gumbs' care.

Defendant cites several Kansas Supreme Court cases dealing with questions of vagueness and ambiguity in this statute. First, she points to *Kansas v. Meinert*,[14] where the Kansas Supreme Court considered a vagueness challenge to a predecessor statute that proscribed "willfully causing or permitting a child under the age of 18 years to suffer *unjustifiable physical pain or mental distress.*"[15] The Court found that the italicized phrase was void for vagueness because nowhere in the statute was it defined.[16] Because the language could be construed as proscribing conduct that possibly could imperil human life, no matter how remote, it "would from a practical standpoint be impossible for a person of common intelligence in every factual situation to draw a clear line between acts which are and which are not immediately and inherently life threatening."[17] This language is no longer included in the current statute and does not dictate a finding in this case that the statute is vague as applied to Defendant.

---

[14] 594 P.2d 232 (Kan. 1979).

[15] K.S.A. § 21-3608(1)(A) (repealed 2010) (emphasis added).

[16] *Id.* at 234 (construing K.S.A. § 21-3608(1)(A)).

[17] *Id.*

8

Next, Defendant cites *Kansas v. Fisher*,[18] which considered a vagueness challenge to a different subsection of the child endangerment statute, defining endangering a child as "unreasonably causing or permitting a child . . . to be placed in a situation in which its life, body or health may be injured or endangered."[19] The defendant challenged the terms "unreasonably" and "may." The Court found neither term unconstitutionally vague and proceeded to construe both terms.[20] The court concluded that "unreasonably" in the context of the statute means "the doing or omitting of some action contrary to reason, the doing of or omitting to do something that the average person, possessing ordinary mental faculties, would not have done or would not have omitted under all of the attendant and known circumstances."[21] The court also construed "may," holding that in the context of the statute, it means something more than "faint or remote."[22] "[I]t means that there is a reasonably probability, a likelihood that harm to the child will result."[23] Notably, in *Fisher*, the court concluded that the statute was constitutional as applied to the spouse of a child abuser, for leaving her child with a person she knew had previously and repeatedly abused that child and others:

> The purpose of K.S.A. 21-3608(1)(b) is salutary. It is to protect children, and to prevent their being placed where it is reasonably certain that injury will result. While the facts in this case have not been established, the State contends that Kathleen Fisher left her infant daughter, Sabrina, in the care of Robert

---

[18]631 P.2d 239 (Kan. 1981).

[19]*Id.* at 241 (construing K.S.A. § 21-3608(1)(b) (repealed 2010) (emphasis added)).

[20]*Id.* at 241, 244.

[21]*Id.* at 241–42.

[22]*Id.* at 243.

[23]*Id.*

9

> Fisher, knowing that Robert had subjected Sabrina to violent physical abuse twice previously, and knowing that he had similarly abused and assaulted his own children and the children of his second wife. Wilfully leaving a tiny child with a person, knowing that he has previously and repeatedly beaten and otherwise abused the child and other children, is without question unreasonable; it obviously places the child "in a situation in which its life, body or health may be injured or endangered," and in which injury appears likely and probable. Whether upon trial the State can establish to a jury's satisfaction the facts it alleges are true, we do not know.
>
> The wording of the statute is broad, but the purpose is likewise broad; to prevent people from placing children in situations where their lives and bodies are obviously in imminent peril. . . . We conclude that K.S.A. 21-3608(1)(b) is clear and understandable; that ordinary persons can determine what conduct is proscribed by a common-sense reading of the statute; that the statute conveys a sufficiently definite warning when measured by common understanding; and that it is not void for vagueness.[24]

As in *Fisher*, the Government alleges in this case that, based on the type and severity of L.V.'s injuries, as well as statements by L.V. and C.T., Defendant left her three children in the care of Specialist Gumbs, knowing that they may be subjected to abuse.

Next, Defendant discusses *Kansas v. Wilson*,[25] which again considered whether the precursor child endangerment statute was void for vagueness. In a brief analysis, the court followed its decision in *Fisher* and found that the statute was not void for vagueness.[26] This case dealt with liability for individuals who were not relatives of the abused child, but who lived in the home and witnessed the abuse, failed to intervene, and on one occasion lied to authorities about whether the endangered child was in the home. In applying the statute to these defendants,

---

[24]*Id.* at 245–46.

[25]987 P.2d 1060 (Kan. 1999).

[26]*Id.* at 1066.

10

the court determined that in order to be liable under the statute, a person must either

> (1) cause a child under the age of 18 years to be placed in a situation where the child's life, body, or health may be injured or endangered, or (2) have authority or control over either the child or the abuser and permit a child under the age of 18 years to be placed in such a situation where the child's life, body, or health may be injured or endangered.[27]

There is no question in this case that Defendant meets the criteria of a person who may be liable under the statute.

Finally, Defendant discusses the recent Kansas Supreme Court case of *Kansas v. Cummings*.[28] This case involved a challenge to the child endangerment jury instruction; there was no constitutional challenge. The jury instruction given at trial stated the first element of the crime as follows: "That the defendant intentionally and unreasonably caused or permitted [K.H.] to be placed in a situation in which there was a *reasonable probability* that [K.H.'s] life, body or health would be injured or endangered."[29] The court discussed its concern about properly defining the level of culpability to support a conviction under the statute, and concluded that the jury instruction was ambiguous.[30] The court reversed and remanded and provided the following language to supplement the pattern instruction:

> In determining if there was a reasonable probability that [the child's] life, body, or health would be injured or endangered, you should consider (1) the gravity of the threatened harm, (2) the legislature's or regulatory body's independent assessment that conduct is inherently perilous, and (3) the likelihood that harm to

---

[27]*Id.* at 1072.

[28]305 P.3d 556 (Kan. 2013).

[29]*Id.* at 560–61. This instruction was taken from Kan. PIK Crim. 3d 58.10.

[30]*Id.* at 565.

11

> the child will result or that the child will be placed in imminent
> peril. "Likelihood" means more than a faint or remote possibility.[31]

The court suggested that this language would cure any ambiguity created by the "reasonable probability" language included in the jury instruction.[32]

Based on all these decisions, Defendant argues that the statute is insufficient to provide her with notice that her day-to-day activities would subject her to prosecution and that it does not give minimal boundaries to law enforcement. The Government contends that the statute defines reckless endangerment and that this Defendant's conduct is clearly encompassed by the statute: it was not possible for her not to have knowledge about L.V.'s injuries. Indeed, the Bill of Particulars states that she testified at the Court Martial that she was aware of L.V.'s injuries. The Government proffers evidence from the treating physician that the October 7 incident was not isolated; that L.V. had injuries and scars that were months and possibly days old. Defendant's decision to allow L.V. and her other children to stay in the home where the abuse was occurring is clearly encompassed by the statute as explained in the *Fisher* decision. Because the statute has been specifically upheld under a similar set of facts, the Court finds that the statute clearly applies to the charges in this case, and therefore Defendant cannot successfully challenge it for vagueness. None of the cases discussed by Defendant dictate a contrary result. The Court denies Defendant's motion to dismiss Counts 2 through 4 as unconstitutionally vague as applied to her.

### C. Motion to Exclude Rule 404(b) Evidence

On February 27, 2014, the Government filed a Notice of Intent to Present Evidence

---

[31] *Id.* at 566.

[32] *Id.*

Pursuant to Rule 404(b), namely, medical records and testimony of Welsh, to show Defendant's intent, knowledge, absence of mistake, and lack of accident.[33] The Government intends to introduce evidence that this child had a severe case of eczema, which Defendant failed to have properly treated, and about which she failed to inform Welsh when he picked the child up for an extended visitation in June 2011. The Government argues that this evidence shows Defendant's knowledge that she was placing the children in a situation in which their life would be endangered and that she therefore should have understood the imminency of danger in failing to seek medical care for L.V.'s injuries. Defendant objects that this evidence must be excluded because it suggests her propensity for neglect, which is inadmissible under Rule 404(b). Moreover, she argues that it should be excluded due to its overwhelming prejudicial effect when weighed against its slight probative value given the lack of similarity between the instance with C.W. in 2011, and the allegations of abuse in the instant case.

In determining admissibility under Rule 404(b), the Court considers: (1) if the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests.[34] The evidence is offered for a proper purpose, "'[i]f the other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition.'"[35]

The Court agrees with Defendant that this evidence is not offered for a proper purpose,

---

[33] Doc. 25.

[34] *United States v. Mares*, 441 F.3d 1152, 1155 (10th Cir. 2006).

[35] *United States v. Irving*, 665 F.3d 1184, 1211 (10th Cir. 2011) (quoting *United States v. Tan*, 254 F.3d 1204, 1208) (10th Cir. 2001)).

but is instead offered to show Defendant's propensity to commit the crimes alleged in the Indictment. The proffered evidence demonstrates very little about Defendant's knowledge in this case. Here, she is alleged to have knowingly and unreasonably caused or permitted her children to be placed in a situation in which their life, body or health may be endangered by leaving them in the care of Specialist Gumbs. The Government must show that when she left the children in his care, that she knew she was placing them at risk. The proffered evidence does not show such knowledge, or absence of mistake. Instead it is being offered to impermissibly infer to the jury that Defendant is a neglectful mother. Evidence of her propensity to overlook her children's injuries is classic propensity evidence that is inadmissible under Rule 404(b).

The Court further finds that assuming the limited relevance of this evidence,[36] it is substantially outweighed by its prejudicial effect. The photographic evidence, as well as the proffered statements by Welch and the police report he filed after the incident, will most certainly cause the jury confusion and undue prejudice that could not be cured with a limiting instruction. For these reasons, the Court denies the Government's Rule 404(b) motion and sustains Defendant's objection.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Christine Gumbs Motion to Dismiss Count 1 of the Indictment (Doc. 22) is granted. Count 1 is hereby dismissed;

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Counts 2-4 of the Indictment (Doc. 23) is denied;

**IT IS FURTHER ORDERED** that the Government's Rule 404(b) Motion (Doc. 25) is

---

[36]Of course, there is no suggestion that C.W.'s medical condition was caused by physical abuse; the evidence suggests that he had extreme eczema and that Defendant failed to apprise Welch of the child's condition, or provide him with medication she had been prescribed to treat the condition.

denied; Defendant's objection is sustained.

Dated: April 21, 2014

                                          S/ Julie A. Robinson
                                          JULIE A. ROBINSON
                                          UNITED STATES DISTRICT JUDGE