IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA

        Plaintiff,

    v.

Christine Kilpatrick FKA
    Christine Gumbs

        Defendant.

Case No. 13-40128-DDC

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through Barry R. Grissom, United States Attorney for the District of Kansas, and Robin A. Graham, Special Assistant United States Attorney and Christine E. Kenney, Assistant United States Attorney for said District, submits the following arguments in regard to sentencing:

**Procedural Background**

On October 16, 2013, the grand jury returned an Indictment against the defendant, Christine Kilpatrick aka Christine Gumbs, charging one count of Accessory After the Fact, in violation of 18 U.S.C. § 3 with the underlying crime against the Government as a violation of the Uniform Code of Military Justice, Article 134 and Article 128, Battery upon a Child under 16

years of Age and Reckless Child Endangerment and three (3) counts of Aggravated Child
Endangerment in violation of K.S.A. 21-5601 and 18 U.S.C. § 13.  (Doc. 1.)

On February 27, 2014, the defendant filed a motion to dismiss Count 1, citing the Court's
lack of jurisdiction to handle the matters as Count 1 alleged that the crime against the
Government was based on articles in the Uniform Code of Military Justice.  (Doc. 22)  The
Court granted the defendant's motion on April 21, 2014, and dismissed Count 1.  (Doc. 42)

On June 4, 2014, based on the Court's ruling dismissing Count 1, the Grand Jury returned
a superseding indictment charging counts 1 and 2 (charged in the alternative), Accessory after
the Fact, with the underlying crime against the Government being Maiming (a violation of 18
U.S.C. § 114) in Count 1 and Assault Resulting in Serious Bodily Injury in Count 2 (a violation
of 18 U.S.C.  § 113(a)(6)).  The remaining Counts remained the same.  (Doc.  46).

The maximum time of incarceration for Count 1 and Count 2 (charged in the alternative)
is not more than 5 years in prison.  The maximum time of incarceration for Counts 3-5 is not
more than 17 months in prison.

On August 4, 2014, the defendant appeared in United States District Court, before U.S.
District Judge Daniel D. Crabtree and pled guilty to Count 2 of the indictment.  There is no plea
agreement in this case; however, the government will dismiss the remaining counts at
sentencing.  (Doc. 61)

### Factual Background

The defendant is the mother of five children.  She currently does not have custody of any
of her children.  The victims in this case, L.V. and C.T., both live with their respective fathers.
The two younger children are in the custody of Kansas.  The fifth child, C.W., has lived with his

father since 2011.  In 2011, C.W. was placed with his father after being hospitalized for neglect while in the defendant's custody.

On October 7, 2012, L.V. was taken to Irwin Army Community Hospital, by his step-father, Specialist Javier Gumbs, with multiple open wounds, lacerations, injuries, and scars. L.V. was lethargic and non-responsive.  L.V. was stabilized and transported to Children's Mercy Hospital, in Kansas City, Missouri for treatment.  After several days of tests, the Child Abuse and Neglect Team ruled that L.V. had non-accidental injuries consistent with inflicted trauma. L.V. eventually disclosed that his step-father, Specialist Gumbs, had burned him with hot water, a gas stove and a charcoal lighter.  Additionally, L.V. stated that Specialist Gumbs beat him with a belt and forced the Rottweiler to bite his ankles.  C.T., L.V.'s brother, testified (during SPC Gumbs' trial) that Specialist Gumbs would hold L.V. down and let the Rottweiler bite his ankles. C.T. also testified that Specialist Gumbs would make C.T. hold L.V. down so the Rottweiler could bite L.V.'s ankles.  C.T. testified that if he didn't hold down L.V. then Specialist Gumbs would burn C.T.  C.T. testified that when L.V. got into trouble Specialist Gumbs would make L.V. do pull-ups; if L.V. didn't do the pull-ups Specialist Gumbs would burn him (L.V.) on his chest with the charcoal lighter.  C.T. testified that Specialist Gumbs would hit him with his fist and a belt.

On February 20, 2013, Specialist Gumbs was charged with violating the Uniform Code of Military Justice.  At the time the charges were brought against Specialist Gumbs, the defendant and Specialist Gumbs were married and living together on Fort Riley.  On May 15, 2013, less than 30 days before Specialist Gumbs' Court-Martial (scheduled for June 10-12, 2013), the defendant went to the Armed Forces Bank and prepared a notarized statement, taking

full responsibility for burning L.V.  At the court-martial, the defendant testified that she drafted the document and she was aware that the charges were pending against her husband when she drafted the document, but asserted her 5th Amendment rights when questioned about the substance of the statement and if she burned L.V.  (Exhibit 3)

Dr. Terra Frazier, Children's Mercy Hospital (CMH) Pediatrician, testified during Specialist Gumbs' courts-martial that she was one of the treating doctors from the Child Abuse and Neglect Team that treated L.V. at CMH.  Dr. Frazier testified that L.V. had multiple injuries on his body and across his face -- "You can see across his face on all of the different aspects there's some degree of injury."  She testified that L.V. had bruising, scabbing, blisters, and multiple skins lesions (some open) across his body.   Dr. Frazier was interviewed by the FBI on March 17, 2014.  During the interview, Dr. Frazier reviewed the initial injury photos of L.V and indicated that some of the injuries and scars could be months old and some of the fresher wounds could be as new as days old.  (Exhibit 1)  Additionally, she stated that the injuries and scars occurred from multiple incidents, over a range of time and were inflicted from a variety of instruments and origins.  Dr. Frazier testified that when she advised the defendant that L.V.'s injuries were from inflicted trauma, the defendant became angry and started to cry.  The defendant told Dr. Frazier that she wanted to remove L.V. from the hospital and take him to another hospital for care.  (Exhibit 2)

## Sentencing Considerations

Pursuant to 18 U.S.C. § 3553(a), the court shall impose a sentence sufficient, but not greater than necessary, to comply with the sentencing purposes.  In determining this appropriate sentence, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

## Sentencing Argument

According to the Presentence Investigation Report (PSR), the defendant's advisory guideline range is 15 to 21 months. (Doc. 81).  The Government is recommending that the defendant be sentenced to 21 months in prison based on the seriousness, nature and circumstances of the offense.

The defendant was the mother of the victims and had primary custody of the children. She acknowledged that she helped dress L.V. every day and she provided daily care for him. L.V. was 5 years old when these injuries were inflicted.  It is highly improbable that such severe injuries, inflicted over weeks or months, went undetected by the defendant.  Per the psychological exam provided by the defense, the defendant admitted that she questioned her husband about the severe wounds on L.V. prior to his hospitalization, but Specialist Gumbs denied responsibility.  (Psychological Exam, page 14 of 16).  The defendant failed to seek 050any medical attention for L.V.'s wounds (prior to his hospitalization) despite her training as a

5

Certified Nursing Assistant (CNA).  Additionally, when L.V. was admitted to Children's Mercy Hospital, seeking a diagnosis, she never disclosed having any knowledge about previous injuries or offered any insight to the source of the injuries.  Dr. Frazier testified that L.V. endured many invasive tests, over several days, before Non-Accidental Trauma was determined.  The defendant never gave any insight into the source of the injuries despite her awareness of the battery of tests administered to L.V.  When Dr. Frazier told the defendant that L.V. was a victim of child abuse, the defendant wanted to remove L.V. from the hospital.  After the diagnosis, the defendant's three children were removed from her home and placed into foster care.   The defendant remained with Specialist Gumbs and didn't file for divorce until months after he was convicted and incarcerated and after she was indicted in the present case.  None of her children have been returned to her care.

During the psychological examination, the defendant admitted that in an effort to save her husband from prison and protect her marriage, she provided a false written confession, taking full responsibility for inflicting L.V.'s injuries.

L.V.'s father testified during the courts-marital about the lasting effects of L.V.'s abuse and how this case has impacted L.V.  "He was peeing the bed.  And he was acting kind of weird, like he would be looking at the sky and stuff, like it you talked to him and try to get his attention about something he just, like you know, not a word."  L.V. was very scared about what happened in Kansas and didn't ever want to go back there.  L.V.'s father testified that L.V. still had scars from the various wounds and when he is at the beach, strangers ask him about his scars.  (Exhibit 4)

L.V. was a vulnerable victim and the only adult who could protect him from harm chose instead to protect her husband, the one that tortured her child.

Based on the nature, severity and gravity of the crime committed, the Government is requesting that the defendant be sentenced to twenty-one (21) months in jail and placed on supervised released for three years.

<h3 align="center">Conclusion</h3>

For the reasons set forth above, along with the background information in the Presentence Report, the Court should impose a sentence of 21 months imprisonment, along with three years of supervised release, and the $100 Special Assessment.  This sentence is sufficient, but not greater than necessary, to address the sentencing goals of 18 U.S.C. 3553(a).

Respectfully submitted,

BARRY R. GRISSOM
United States Attorney


/s/ Robin A. Graham
Robin A. Graham, #19249
Special Assistant United States Attorney
216 Custer Ave.
Fort Riley, KS  66442
(785) 239-6033
Robin.graham@us.army.mil

/s/ Christine E. Kenney
Christine E. Kenney, #13542
Assistant U.S. Attorney
444 SE Quincy, Room 290
Topeka, KS   66683
(785) 295-2850
christine.kenney@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of April, 2015, I electronically filed the foregoing

response with the clerk of the court by using the CM/ECF system, which will send a notice of

electronic filing to all counsel of record.

s/ ROBIN A. GRAHAM
Robin A. Graham, #19249
Special Assistant United States Attorney
216 Custer Ave.
Fort Riley, KS   66442
(785) 239-6033
Robin.graham@us.army.mil